# In the United States Court of Federal Claims

No. 13-440 C
(Filed: January 27, 2014)

```
*************************************
                                    *
JAIME L. FELICIANO,                 *
                                    *
              Plaintiff,            *
                                    *
       v.                           *
                                    *
THE UNITED STATES,                  *
                                    *
              Defendant.            *
                                    *
*************************************
```

*Jason Ellis Perry*, Cheshire, CT, for Plaintiff.

*Alex P. Hontos*, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

### ORDER AND OPINION

**Damich**, Judge:

In this action, Plaintiff seeks military back pay and allowances in challenging the non-judicial punishment ("NJP") that led to her discharge from the United States Marine Corps as well as disability benefits as a result of an injury she sustained in basic training. Defendant has moved instead to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, on the grounds that both of her claims are barred by this Court's applicable six-year statute of limitations.

Because the Court finds that Plaintiff's claims accrued more than six years prior to the filing of her complaint, it is jurisdictionally obliged to grant Defendant's motion and to dismiss her claims.

I.  Background

Plaintiff, Ms. Jaime L. Feliciano, enlisted in the United States Marine Corps on August 26, 2002, and obtained the rank of Lance Corporal (E3). Compl. ¶ 6. She was discharged on September 24, 2004. Compl. ¶¶ 6, 23.

1

Ms. Feliciana avers that on September 25, 2002, during recruit combat training, she fell from an obstacle course tower and was knocked unconscious. Compl. ¶ 6. She asserts that she was diagnosed with a concussion "as a result of traumatic brain injury" and that she later developed migraines, syncopal episodes, and dementia. *Id*. She alleges that her medical issues persisted into 2003, after having reported to duty station in Okinawa, Japan. *Id*. ¶ 7. In July 2003, she was medically evacuated from Japan to Naval Medical Center, San Diego, California, for treatment, medication, and injury management. *Id*. ¶ 8. She was placed on limited duty upon return to her duty station in Japan. In December 2003, she asserts she was counseled by her command for deficiency in performance, including in particular an inability, which she attributes to her migraines, dizziness, and fainting, to participate in various exercises, conditioning hikes, and field duty. *Id*. ¶ 9.

In February 2004, military police investigated the alleged theft of Ms. Feliciano's prescription medication by a fellow Marine. *Id*. ¶ 10. The accused admitted the theft and that he had shared the medications with a roommate. The roommate required medical intervention for overdosing. *Id*. The accused subsequently recanted his admission and claimed that Ms. Feliciano had given him the medication. *Id*.

Ms. Feliciano's own medical issues continued. On March 3, 2004, the Neurology Department at Naval Hospital Okinawa notified her command that she was not responding well to treatment for her loss of consciousness/syncopal episodes and migraines and that a medical board had been initiated. *Id*. ¶ 11. On March 25, 2004, she was afforded preliminary counseling regarding disability processing and a Medical Evaluation Board ("MEB") referred her medical record to a Physical Evaluation Board ("PEB"). *Id*. ¶ 12; Def.s Motion to Dismiss ("Def.'s Mot.") at 2. As her complaint recites, "This counseling indicated that she was being considered for separation or retirement based on her disabilities." Compl. ¶ 12.

On April 2, 2004, however, she received non-judicial punishment ("NJP") under the Uniform Code of Military Justice for the offenses of having wrongfully distributed two prescription medications: amitriptyline pills in January 2004 and Percocet pills in November 2003. *Id*. ¶ 14. She was reduced in rank and forfeited two months' pay. *Id*. On May 12, 2004, she was notified of the initiation of administrative separation proceedings due to misconduct related to drug abuse. *Id*. ¶ 16. The misconduct was characterized as "wrongful use of amitriptyline." *Id*.

Citing her pending administrative separation due to misconduct, the PEB "rejected" Ms. Feliciano's medical evaluation referral. *Id*. ¶ 17; Def.'s Mot., App'x A009. The rejection was not a merits-based determination, but rather made because the service-member had a preemptory action for legal/administrative-based separation already pending. *Id*. As Plaintiff noted in her response to the Government's motion to dismiss, citing Secretary of the Navy Instruction ("SECNAVINST") 1850.4E, Para. 3403, "disciplinary separation . . . normally supersede[s] disability separation or retirement." Pl.'s Resp. at 2.

While her administrative separation action was proceeding, Plaintiff was evacuated in June 2004 to the Naval Medical Center in San Diego for continued neurological treatment. Compl. ¶ 19. A medical treatment note in September 2004 asserted that she was determined "unfit for duty." *Id*. ¶ 20. On September 10, 2004, the Navy issued a second MEB for her post-concussive syndrome. *Id*. ¶ 21. She was given a processing memo relating to a PEB separation physical exam requirement. *Id*.

Nevertheless, she was discharged from the Marine Corps on September 24, 2004, under "other than honorable conditions" due to misconduct related to drug abuse. *Id*. ¶ 23. Although the second MEB had again referred her to a PEB for disability consideration, a second PEB never was convened. *Id*. ¶ 24.

On August 8, 2005, Ms. Feliciano applied to the Naval Discharge Review Board ("NDRB") for an upgrade to honorable of the characterization of her discharge. *Id*. ¶ 25. On May 4, 2006, the NDRB denied the relief sought. *Id*. ¶ 26. Nearly three years later, on February 12, 2009, Ms. Feliciano submitted an appeal to the NDRB of the denial of her request for relief. *Id*. ¶ 27. On April 30, 2010, the NDRB granted her relief to the extent that her discharge was upgraded to "honorable" pursuant to "Secretarial Authority." *Id*. ¶ 28.

Consequently, on June 16, 2011, Ms. Feliciano applied to the Board for Correction of Naval Records ("BCNR") for relief including back pay, removal of her NJP, and disability retirement benefits. On September 20, 2012, however, the BCNR denied her application. *Id*. ¶ 33. It found that her application was untimely and that it was not in the interest of justice to excuse its untimeliness. *Id*.; Def.'s Mot., App'x A001. The BCNR noted that it was "unable to conduct a meaningful review of your contentions of legal error in the imposition of your nonjudicial punishment, or of your claim of factual innocence of the charge offenses, due to the amount of time which has elapsed since the punishment was imposed . . ." *Id*. The BCNR further noted that the NDRB's upgrade of Ms. Feliciano's discharge to honorable due to Secretarial Authority "did not have the effect of setting aside the discharge, and it did not entitle you to consideration of your case by the Physical Evaluation Board, or correction of your naval record to show that you were retired by reason of physical disability." *Id*. ¶ 33; Def.'s Mot., App'x A002.

Plaintiff filed her complaint in this Court on July 1, 2013. She asserts that the BCNR decision was arbitrary, capricious, contrary to law and regulations, and not supported by substantial evidence. Compl. ¶ 34.

II.     Legal Standards

Under the Tucker Act, the United States Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). While the Tucker Act waives the sovereign immunity of the United States for monetary

damages, it is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976).  That substantive right must derive from a source that is "money-mandating."  *See Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

In this case, Ms. Feliciano claims disability retirement pay under 10 U.S.C. § 1201 and restoration of military rank and forfeited pay under 37 U.S.C. § 204.  However, all claims before this court under the Tucker Act are subject to a six-year statute of limitations: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition is filed within six years after such claim first accrues."  28 U.S.C. § 2501.  The limitations period under § 2501 "may not be waived" because it is "a jurisdictional requirement for a suit in the Court of Federal Claims." *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2008).  Likewise, it is "not susceptible to equitable tolling." *John R. Sand & Gravel Co.*, 552 U.S. at 136.

In *Martinez v. United States*, the Federal Circuit determined that "[a] cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'"  *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)).

In the context of a claim arising from a military discharge, a "plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge."  "[T]he claim for back pay," however, "is not a 'continuing claim' that accrues each time a payment would be due throughout the period that the service member would have remained on active duty." *Martinez*, 333 F.3d at 1303 (internal citations omitted).  Rather, it accrues on the date of discharge, "'once and for all.'"  *Id*. (citing *Mathis v. United States*, 391 F.2d 938, 939 (Ct. Cl. 1968)).  Therefore, a claimant must file suit within the six-year limitation period provided under 28 U.S.C. § 2501 or "the plaintiff loses all rights to sue for the loss of pay stemming from the challenged discharge."  *Id.* at 1304.  Consistently, a claimant cannot toll the claim by seeking permissive administrative review before a military corrections review board.  *Id.* at 1312.

The Federal Circuit differentiates, however, between the accrual date of claims arising from a military discharge and "claims of entitlement to disability retirement pay" because the latter claims "generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it."  *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005) (citing *Real v. United States*, 906 F.2d 1556, 1560 (Fed. Cir. 1990)).  Because, under 10 U.S.C. § 1201, Congress entrusted the military with the initial task of assessing retirement due to disability, "no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act." *Friedman v. United States,* 310 F.2d 381, 389 (Ct. Cl. 1962).  By contrast, "mere release from active duty without a Retiring Board (or request for one) or without disability retirement pay is not enough to start the limitations period." *Id.* at 390.

4

In *Real*, the Federal Circuit characterized the *Friedman* rule: "Thus, under *Friedman* if the service member had neither requested nor been offered consideration by a retiring board prior to discharge, the later denial of his petition by the corrections board was the triggering event, not his discharge." *Real*, 906 F.2d at 1560.

III.   Discussion

Ms. Feliciano's claims must be dismissed because they accrued more than six years before she filed her complaint on July 1, 2013 and her claims cannot otherwise be tolled. Both of Ms. Feliciano's claims, requesting disability retirement pay under 10 U.S.C. § 1201and restoration of military rank and forfeited pay under 37 U.S.C. § 204(a), accrued at the time of her military discharge on September 24, 2004.

A.   Claim for Restoration of Military Rank and Forfeited Pay

The Federal Circuit's holding in *Martinez*, stating that "a plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge," renders Ms. Feliciano's claim for the restoration of military rank and forfeited pay under 37 U.S.C. § 204 time-barred under 28 U.S.C. § 2501 because it accrued when she was discharged from the Marine Corps on September 24, 2004. *Martinez*, 333 F.3d at 1303 (internal citations omitted). Ms. Feliciano must have filed her case on or before September 2010 in order for her claim to have been within the six-year limitation period prescribed by § 2501.

B.   Claim for Disability Retirement Pay

Whether Ms. Feliciano's claim for disability benefits accrued as of the September 2004 date of her military discharge or in September 2012 when the BCNR denied her application is a closer question than the accrual date of her claim for back pay.

In *Chambers*, the Federal Circuit indicated that a disability retirement pay claim wouldn't generally "accrue until the appropriate military board either finally denies such a claim or refuses to hear it." *Chambers*, 417 F.3d at 1224 (internal citations omitted). The Federal Circuit also stated in *Chambers* that, "if at the time of discharge, the service member requested review by an appropriate board and the request was denied, or if the board heard the service member's claim and denied it, then the limitations period begins to run upon discharge." *Id*. at 1225. Prior to *Chambers*, the Federal Circuit's decision in *Real* stated pertinently that "[a] subsequent petition to the corrections board does not toll the running of the limitations period." *Real*, 906 F.2d at 1560 (citing *Friedman,* 310 F.2d at 390.

Prior to Ms. Feliciano's discharge from the Marine Corps on September 24, 2004, the PEB had already rejected Ms. Feliciano's MEB – on May 18, 2004 – because of her pending administrative separation. Compl. at ¶¶ 17, 23. Prior to her military discharge, the Department of the Navy initiated a second MEB for Ms. Feliciano's post-concussive

syndrome on September 10, 2004, but that report was not referred to an PEB for adjudication until October 1, 2004, subsequent to her discharge. *Id*. at ¶¶ 21, 24. Since Ms. Feliciano was discharged from the Marine Corps without the PEB having considered her second MEB referral, Plaintiff argues that the BCNR in 2012 was "the first proper board to act on her claims." Pl.'s Resp. at 9. Thus, per the guidance in *Chambers*, she argues, "the statute of limitations did not begin to run until the decision of the BCNR was issued." *Id*.

Unfortunately for Ms. Feliciano, it is significant that the second MEB derives from the same injury addressed in the first MEB, which was referred to a PEB on March 25, 2004. Compl. at ¶¶ 6, 12, 13, 17. At the time of her discharge, therefore, the PEB had already rejected, i.e., "denied," her first MEB and did not convene to address the second MEB referral regarding the same injury. *Id*. at ¶¶ 17, 24. Under *Chambers*, the PEB's refusal to consider Ms. Feliciano's first MEB establishes that her disability claim accrued upon the date of Ms. Feliciano's discharge. *Chambers*, 417 F.3d at 1224 (disability claim accrues when "the appropriate military board either finally denies such a claim *or refuses to hear it*.") (emphasis added). The decision in *Chambers* also firmly establishes that a PEB constitutes such an appropriate board. *Id*. at 1225 n.2.

However, Plaintiff insists that Ms. Feliciano's discharge without a final determination on her second MEB evidences the BCNR's 2012 decision as the date her claim accrued, based the following statement from *Chambers*: "But where the claimant 'has not had or sought a [PEB], his claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the [PEB] as the proper tribunal to determine eligibility for disability retirement).'" *Id.* at 1225 (quoting *Friedman*, 310 F.2d at 396). Plaintiff also contends that the following statement in *Chambers* supports her argument:

> Thus where the service member was released from service without a board hearing and subsequently files a claim for disability retirement before a military correction board, 'the Correction Board becomes the first proper board to act (or to be asked to act) on the matter, and the claim does not ripen until that Board's action is final….' The Correction Board proceeding 'becomes a *mandatory* remedy.'

*Id.* (emphasis in original) (quoting *Friedman*, 310 F.2d at 396).

Accordingly, Plaintiff contends that "[h]ad Ms. Feliciano filed suit in this court [soon after her 2004 discharge] there would be a dismissal for lack of subject matter jurisdiction because she was not eligible to receive disability compensation because of her misconduct discharge." Pl.'s Resp. at 9-10.

Ms. Feliciano is mistaken. In fact, a PEB took cognizance of Ms. Feliciano's first MEB referral and rejected it before her discharge. Compl. at ¶ 17. Thus the PEB, not the

6

Corrections Board, became "the first proper board to act (or to be asked to act) on the matter." *Chambers*, 417 F.3d at 1225 (internal citations omitted).

Plaintiff also contends that because she herself had not requested the PEB, her claim could not have accrued until the BCNR's 2012 decision. Pl.'s Resp. at 9. "Under either MEB, Ms. Feliciano did not have or seek a retiring board. Both MEB's were convened at the direction of military medical officers and not by request of Ms. Feliciano." *Id*. This Court does not find that distinction to be determinative. The key element in determining the accrual date of a disability retirement claim is the *action* of an authorized board, not who requested the PEB. *See Real,* 906 F.2d at 1560 ("if the service member had neither requested *nor been offered consideration* by a retiring board . . .) (emphasis added).

As Defendant soundly argues, "Ms. Feliciano's disability claim for injuries suffered during basic training was forwarded from the MEB to the PEB, which took cognizance of the claim but ultimately refused to hear it because of administrative separation proceedings related to her drug abuse." Def.'s Reply at 3.

It is not necessary that the PEB must have acted on the merits of Plaintiff's disability consideration. It refused to hear her claim and that "rejection" triggered the running of the six-year statute of limitations from the time of her discharge on September 24, 2004. She filed her complaint in this Court, however, more than six years later, on July 1, 2013.

IV.     Conclusion

Because the limitations period is jurisdictional, this Court is not empowered to proceed in hearing her claims. For the above reasons, Defendant's motion to dismiss is GRANTED. The Clerk is directed to enter judgment accordingly.

s/ Edward J. Damich  
EDWARD J. DAMICH  
Judge